# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**PAUL HARRISON MAYS, JR.**                                    **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 3:17-CV-P290-JHM**

**KENTUCKY DEP'T OF CORR. et al.**                               **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Harrison Mays, Jr., a prisoner presently incarcerated at Little Sandy Correctional Complex (LSCC), originally filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 in the Eastern District of Kentucky (DN 1). Subsequently, the Eastern District of Kentucky transferred the action to this Court (DN 4). There were deficiencies with the filing of the complaint. Thus, this Court entered an Order on September 22, 2017 (DN 10), in which it ordered Plaintiff to remedy the deficiencies. Plaintiff was ordered, in part, to file his action on the Court-approved form for filing an action pursuant to 42 U.S.C. § 1983. In compliance with the Court's Order, Plaintiff filed an amended complaint (DN 16). The Court performed an initial review of the amended complaint (DN 16) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) on November 22, 2017, and allowed Fourteenth Amendment claims against Defendants West, Rodriguez, Mason, Herndon, Stewart, Strang, and Saager in their individual capacities for monetary damages to proceed. The other claims and Defendants were dismissed from this action.

Plaintiff has now filed a second amended complaint (DN 22) which is presently before the Court for review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601. For the reasons that follow, the Court will allow the Fourteenth Amendment claims to proceed against Defendants Stickelmeyer, Cambareri, and Tupai in their individual capacities for monetary damages

## I. SUMMARY OF CLAIMS

In his second amended complaint (DN 22), Plaintiff names three additional Defendants. He identifies the Defendants as follows: (1) Brandon Stickelmeyer, a Certifying Scientist with Cordant Health Solutions (Cordant); (2) Morgan Cambareri, an Extraction Analyst with Cordant; and (3) Christina Tupai, also an employee of Cordant who Plaintiff indicates was involved in the aliquot stage of the urinalysis testing about which Plaintiff complains. Plaintiff states that he sues these Defendants in their individual and official capacities. As relief, Plaintiff seeks monetary damages.

As way of background, Plaintiff alleges that on January 5, 2016, while he was housed at Dismas Charities, Portland, he was subjected to a urinalysis. Generally, Plaintiff asserts that the urine specimen was not properly obtained or analyzed and that laboratory documents were improperly altered and used to charge Plaintiff with unauthorized use of drugs or intoxicants. At the adjustment hearing, Plaintiff was found guilty of two charges of Unauthorized Use of Drugs or Intoxicant, and he was issued a penalty of 60 days loss of good-time credits for each charge. Plaintiff eventually challenged the guilty findings in the Oldham Circuit Court. The Oldham Circuit Court found that Plaintiff's petition was "well taken" and granted "the relief sought which is restoration of good time and expungement of the [Plaintiff's] record in regard to the

positive urine tests collected from Dismas Charities which are the subject of his disciplinary proceeding and appeal." The Oldham Circuit Court explained its concern with the chain of custody of the urine specimen as follows:

> The urine sample indicates that it was initially tested on January 7 and confirmation test was conducted January 8. However the internal chain of custody indicates that the aliquot process was performed January 14, 2016 which is of concern since the specimen could not have been divided after the tests were performed. As a result of this anomaly, the Department of Corrections contacted Cordant Health Solutions and on February 1, 2017 (over a year later) the laboratory faxed a corrected chain of custody showing the aliquot was performed on January 7, 2016. . . . The Court must agree with the [Plaintiff] in this case. There is absolutely no explanation for the error and the Court is unwilling to accept the facts without any explanation whatsoever as to the seemingly incorrect chain of custody.

In the second amended complaint before the Court, Plaintiff alleges that Defendant Stickelmeyer wronged Plaintiff by "adding his name and signature to/as an altered document in an effort to uphold a conviction in which [Plaintiff] lost good time credits and visiting priveledges." As to Defendant Cambareri, Plaintiff alleges that she "lent her name and signature to an altered document (changing time of Extraction Analyst from 1/8/2016 3:09:40AM to 1/15/2016 1:42:10AM[)] in an effort to cover up evidence that was originally unreliable." Finally, Plaintiff alleges that Defendant Tupai "lent her name and signature to an altered/forged document in an effort to uphold a wrongful conviction and cover up [of] unreliable evidence."

## II. **STANDARD OF REVIEW**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A. Official-Capacity Claims

Plaintiff sues Defendants Stickelmeyer, Cambareri, and Tupai in their official capacities as employees of Cordant. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Suing these Defendants in their official capacities is the equivalent of suing their employer Cordant. *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The same municipal-liability analysis applies to § 1983 claims against private corporations like Cordant. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("'*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.'") (quoting *Harvey v. Harvey*, 949 F. 2d 1127, 1129 (11th Cir. 1992)). Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Id.* at 817; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

Plaintiff has not alleged that any policy or custom of Cordant caused his alleged harm. Further, he has not alleged that any inadequacy of Cordant's employees' training caused his alleged

harm. Plaintiff's second amended complaint appears to contain allegations of isolated occurrences affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Cordant, the official-capacity claims will be dismissed.

## B. Individual-Capacity Claims

Plaintiff also sues Defendants in their individual capacities for their part in the processing of the urine specimen used to support the disciplinary charges against him. Upon consideration, the Court will allow Fourteenth Amendment claims to proceed against Defendants Stickelmeyer, Cambareri, and Tupai in their individual capacities for monetary damages.[1]

## IV. CONCLUSION AND ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the official-capacity claims against Defendants Stickelmeyer, Cambareri, and Tupai are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the Fourteenth Amendment claims against Defendants Stickelmeyer, Cambareri, and Tupai in their individual capacities for monetary damages shall proceed.

---

[1] The Court is aware that there may be issues as to whether such claims may be brought against Defendants as employees of Cordant, a private entity. However, at this stage of the proceedings, this Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). Furthermore, these are issues best fleshed out by the parties either through motion and/or discovery.

The Court will enter a separate Order Directing Service and Scheduling Order governing the development of the continuing claims. In permitting these claims to continue, the Court passes no judgment on the merit and ultimate outcome of the action.

Date: January 17, 2018

**Joseph H. McKinley, Jr., Chief Judge
United States District Court**

cc: Plaintiff, *pro se*
      Defendants Saager, Stewart, West, Stickelmeyer, Cambareri, and Tupai
      Counsel for Defendants Strang, Rodriguez, Herndon, and Mason
4414.003