# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**PAUL HARRISON MAYS, JR.**                                           **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO. 3:17-CV-P290-JHM**

**KENTUCKY DEPT. OF CORRECTIONS** *et al.*                           **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Defendants Webb Strang, Jose A. Rodriguez, Jr., David Herndon, and Amanda L. Mason (hereafter "Defendants") for summary judgment based upon Plaintiff's failure to exhaust administrative remedies (DN 43). For the following reasons, the Court will deny this motion.

## I. FACTUAL BACKGROUND

*Pro se* Plaintiff Paul Harrison Mays, Jr., was accused of failing a urinalysis taken by officials at Dismas Charities, Portland Halfway House, on January 5, 2016. This urine sample allegedly tested positive for methamphetamine and morphine. As a result of this allegedly positive drug screen, Plaintiff was transported to Luther Luckett Correctional Complex (LLCC) for disciplinary proceedings.

On March 15, 2016, LLCC official Defendant Rodriguez initiated two disciplinary reports for Plaintiff stating that the urine sample taken by Dismas Charities in January had tested positive for methamphetamine and morphine. On March 19, 2016, LLCC official Defendant Mason read these reports to Plaintiff and Plaintiff stated that he had never been drug tested while he was at "Dismas Portland." On April 20, 2016, a disciplinary hearing was conducted before LLCC official Defendant Herndon. Defendant Herndon found Plaintiff guilty of two counts of the "unauthorized use of drugs or intoxicants" despite Plaintiff's arguments that his due process

rights had been violated due to various chain of custody issues with the urinalysis. Defendant Herndon sentenced Plaintiff to the loss of 60 days of good-time credits for each count. Plaintiff appealed this guilty decision to LLCC "Acting Warden" Defendant Strang, but on May 19, 2016, Defendant Strang upheld Defendant Herndon's guilty decision finding that Plaintiff's due process rights had not been violated.

On August 10, 2016, Plaintiff filed a grievance regarding his disciplinary conviction and the underlying urinalysis. This grievance mentioned both Defendants Herndon and Strang but did not mention Defendants Rodriguez or Mason. On August 11, 2016, this grievance was rejected as "non-grievable."

On October 14, 2016, Plaintiff filed a petition for the declaration of his rights in state court.[1] On April 19, 2017, the Oldham Circuit Court overturned Plaintiff's LLCC conviction. The court found that internal chain of custody from the laboratory showed that the "aliquot," or division of the sample, occurred after the testing of the sample. The court further found that there was "absolutely no explanation for [this] error" and that it was "unwilling to accept the facts without any explanation whatsoever as to the seemingly incorrect chain of custody." The court ordered the restoration of Plaintiff's "good time and expungement of [his] record in regard to the positive urine tests collected from Dismas Charities."

In May 2017, Plaintiff initiated this 42 U.S.C. § 1983 action seeking damages for the violation of his right to due process.

## II. LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a

---

[1] Plaintiff initially filed this action in Franklin Circuit Court, but it was transferred to the Oldham Circuit Court because the conduct challenged by Plaintiff occurred in Oldham County, where LLCC is located.

matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard that the Court reviews the facts presented.

### III. ANALYSIS

In their motion for summary judgment, Defendants argue that Defendants Rodriguez and Mason are entitled to judgment in their favor because Plaintiff did not name them in his grievance and, therefore, failed to exhaust his administrative remedies against them.

There is no general requirement that a plaintiff must exhaust any available administrative remedies before bringing a claim for constitutional violations pursuant to § 1983. *Patsy v. Bd. of Regents*, 457 U.S. 496, 507 (1982). However, Congress created an exception to this rule for claims brought by prisoners when it passed the Prison Litigation Reform Act ("PLRA"). Under 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Failure to exhaust administrative remedies is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), which the defendant has the burden to plead and prove by a preponderance of the evidence.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). But an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then § 1997e will not act as a barrier to suit. *Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016).

Requiring exhaustion serves two purposes. First, it gives an agency "'an opportunity to correct its own mistakes with respect to the program it administers before it is haled into federal court,'" and it discourages "'disregard of [the agency's] procedures.'" *Woodford v. Ngo*, 548 at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, exhaustion promotes efficiency. *Id*. This is because "[c]laims generally can be resolved much more quickly and

economically in proceedings before an agency than in litigation in federal court." *Id*. Proper exhaustion of administrative remedies requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91 (footnote omitted).

The Kentucky Department of Corrections (KDOC) has an Inmate Grievance Procedure (DN 43-3, Kentucky Corrections Policy and Procedures (CPP) 14.6). This procedure includes a list of eleven non-grievable issues (DN 43-3, CPP 14.6, p. 2, ¶ II(C)). If an inmate wishes to file a grievance, he must do so in writing, and the grievance must include "all aspects of the issue and identify all individuals . . . so that problems concerning the issue or individuals may be dealt with . . ." (DN 43-3, CPP 14.6, p. 8, ¶ II(J)(1)(a)(5)). A grievance may either be rejected or permitted to move on to the informal resolution stage (DN 43-3, CPP 14.6, pp. 9-10, ¶ II(J)(1)). While there is a multi-step appeals process for grievances that move on to the informal resolution stage, there is no appeals process for grievances that are rejected. Specifically, there is no procedure that allows for an appeal of a grievance that is rejected as "non-grievable."

Here, neither party disputes that Plaintiff's grievance was rejected because it was properly deemed "non-grievable," in accordance with the KDOC Inmate Grievance Procedure, or that Plaintiff failed to name Defendants Rodriguez or Mason in this grievance. Rather, the dispute is over whether Plaintiff's failure to name these Defendants in his "non-grievable" grievance means that they should be dismissed from this action for failure to exhaust available administrative remedies. The Court thinks not.

It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues. *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006); *Figel v.*

5

*Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004). This is because the non-grievability of a certain type of issue through a prison grievance process makes that remedy unavailable under the PLRA. *Owens v. Keeling*, 461 F.3d at 769. Thus, because the prison grievance procedure was entirely unavailable to Plaintiff due to the nature of his complaint, there is no way that Plaintiff could have failed to exhaust his remedies as to any Defendant.[2] Indeed, as another district court stated in rejecting an argument identical to the one raised here, "Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too." *Reeves v. Hobbs*, 6:11-cv-06047, 2013 U.S. Dist. LEXIS 140698, at *15 (W.D. Ark. Sept. 3, 2013).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 43) is **DENIED**.

Date: September 25, 2018

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Counsel of Record
4414.011

---

[2] In support of their motion, Defendants cite to a decision of this Court, *Morgan et al. v. Kentucky et al.*, 3:17-cv-474-JHM (W.D. Ky. Nov. 3, 2017) (DN 20), in which the Court held that an inmate's failure to name all defendants in his grievance, in violation of ¶ II(J)(1)(a)(5)) of the Inmate Grievance Procedure, meant that the case was subject to dismissal as to the unnamed defendants. However, in that case, the grievance at issue had been *improperly* deemed "non-grievable" by prison officials. Moreover, the Court reconsidered that decision in a subsequent Memorandum Opinion and Order and held that summary judgment on exhaustion grounds was inappropriate. No. 3:17-cv-474-JHM (W.D. Ky. Feb. 5, 2018) (DN 27).